IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FREDERICK PAUL HERBST,
STEVE LOPEZ, and
TIM KEATON,

          Plaintiffs,

vs.                                                          No. CIV 02-0202 LCS/KBM

**LINCOLN COUNTY BOARD OF COUNTY
COMMISSIONERS in their official capacity;
LINCOLN COUNTY SHERIFF TOM SULLIVAN
in his official capacity; LINCOLN COUNTY
SHERIFF DEPUTIES RICHARD ALVAREZ, KEN
CRAMER, AND PATRICK O'BRIEN
in their individual and official capacities,**

          Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment (Doc. 24), filed on July 30, 2002, and Plaintiffs' Motion to Strike the Affidavit of Richard Alvarez (Doc. 32), filed on August 23, 2002. The Court, acting upon consent and designation pursuant 28 U.S.C. § 636, and having considered the submissions of counsel, relevant law, and being otherwise fully advised, finds that Plaintiffs' Motion to Strike should be **GRANTED IN PART AND DENIED IN PART,** and that Defendants' Motion for Summary Judgment should be **GRANTED IN PART AND DENIED IN PART**.

I.      **Facts.**

The following statement of facts is set forth in the light most favorable to Plaintiffs, with all reasonable inferences from the record drawn in their favor. *See Clanton v. Cooper*, 129 F.3d 1147, 1150 (10th Cir.1997). Prior to October 6, 2001, Plaintiffs were employed as part-time parking valets

at the Spencer Theater (Theater) located in Lincoln County, New Mexico. (Defs.' Undisp. Facts ¶ 1.) Defendants Alvarez, O'Brien and Cramer are law enforcement officers employed by the Lincoln County Sheriff's Department (LCSD) and were acting in this capacity at all material times. (Defs.' Undisp. Facts ¶ 2.)

On August 27, 2001, Robert Ross filed a police report with Defendant Alvarez, complaining that his revolver had been stolen from his car while it was valet parked at the Theater. (Alvarez Aff., Defs.' Ex. 1 ¶ 3.) The Theater is located in a remote area and is effectively accessible only by vehicle. (Defs.' Ex. 1 ¶ 4.) Defendant Alvarez contacted Ed Spurr, the Theater's Operations Manager on September 12, 2001 to follow up on the report. (Defs.' Ex. 1 ¶ 5.) After considering several investigatory options with Defendant O'Brien, Defendant Alvarez concluded that a "sting" operation should be conducted in an effort apprehend the perpetrator. (Defs.' Ex. 1 ¶¶ 9-14.)

In order to execute the sting operation, Defendant Alvarez planned to place marked bills in the glove compartments of two vehicles that were to be valet parked at the Theater on October 6, 2001. (Defs.' Ex. 1 ¶ 14.) The vehicles would be examined following the performance to see if any of the cash had been taken. (*Id*.) If the money was missing, Defendant Alvarez then planned to search the valets on duty and their vehicles for the missing bills. (*Id*.)

Defendant Alvarez consulted with Assistant District Attorney Ken Wilson and prepared an application for anticipatory search warrants for the persons of each Plaintiff and another valet who was scheduled to work October 6, 2001. (Defs.' Ex. 1 ¶ 15.) The warrants were issued by Lincoln County Magistrate Judge Gerald Dean and were to be executed if Plaintiffs or the other named valet were working as valets on October 6, 2001, and any of the marked bills were found to be missing. (Defs.' Ex. 1 ¶ 16.)

2

Defendant Alvarez initiated the sting operation on October 6, 2001, using his Ford F150 truck and a Lincoln Continental belonging to a LCSD secretary. (Defs.' Ex. 1 ¶¶ 17-18.) Defendant Alvarez recorded the serial numbers of two packets that each contained one fifty-dollar bill and ten twenty-dollar bills. (Defs.' Ex. 1 ¶ 18.) The packets of bills were then placed in the glove compartment of each vehicle. *Id.* Following the performance, the bills that had been placed in the Lincoln Continental were missing. (Defs.' Ex. 1 ¶ 21.)

Defendant Alvarez then contacted Defendant Cramer and asked him to bring the pre-approved search warrants to the Theater. (Defs.' Ex. 1 ¶ 22.) When Cramer arrived, most of the attendees had left. (*Id*.) Defendants Alvarez and Cramer met Plaintiffs at the valet stand, took them inside to an area adjacent to the Theater's business office, explained the sting operation and showed them the warrants. (Defs.' Ex. 1 ¶¶ 23-24.)

Defendant Alvarez placed Plaintiff Herbst in an office with glass windows opening onto a public hallway and left the door open. (Pl. Ex. A, Herbst Aff. ¶ 7.) Defendant Alvarez asked Plaintiff Herbst to empty his pockets, performed a pat-down search, and then a strip search. (Defs.' Ex. 1 ¶ 27.) Plaintiff Herbst was required to drop his pants and undershorts while Defendant Alvarez searched him. (Pl. Ex. A ¶ 9.) During the search, Defendant Alvarez was about one foot away from Plaintiff Herbst's. (Pl. Ex. A ¶ 10-11.) Plaintiff Herbst could see the head of security of the Theater and other individuals that he did not recognize through the glass partitions. *Id*. Defendant Alvarez searched Plaintiffs Lopez and Keaton one at a time in the same manner in an adjacent private office with the door closed. (Defs.' Ex. 1 ¶ 30.) Defendants Alvarez and Cramer then searched Plaintiffs' vehicles. (Defs.' Ex. 1 ¶ 33.) None of the searches revealed the missing money. (Defs.' Ex. 1 ¶ 32.)

During the search, Plaintiff Herbst informed Defendant Alvarez that the Theater policy was

3

to leave the keys in the vehicles and the windows rolled down while vehicles were valet parked. (Pl. Ex. A ¶ 13.) Defendant Alvarez appeared taken aback by that revelation, (Pl. Ex. A ¶ 14), and was not aware of that policy before that time. (Defs.' Ex. 1 ¶ 35.)   Defendants admit that is was the practice of the Theater to leave valet parked vehicles unlocked with the keys in the vehicle during performances. (Pl. Ex. B, Defs.' Resp. to Pl's Request for Adm. No. 2.)  Defendants further admit that they did not know or verify that Plaintiffs lacked exclusive control of the valet parked vehicles at the time that they obtained the anticipatory search warrants for Plaintiffs' persons and vehicles. (Pl. Ex. B, Defs.' Resp. to Pl's Request for Adm. No. 5.)   Additionally, Defendants admit that they did not tell Judge Dean that Plaintiffs did not have exclusive control and access to the vehicles. (Pl. Ex. B, Defs.' Resp. to Pl's Request for Adm. No. 7.)

**II.     Procedural Background.**

On February 20, 2002, Plaintiffs filed their Complaint in this Court, alleging violation of their civil rights under 42 U.S.C. § 1983, and supplemental claims for negligent supervision and training, invasion of privacy, and intentional infliction of emotional distress.

On July 30, 2002, Defendants filed their Motion for Summary Judgment, arguing that they are entitled to qualified immunity with respect to Plaintiffs' §1983 claims, the search warrants were issued with probable cause, the attendant detentions of Plaintiffs to execute the warrants were permissible, the searches of Plaintiffs were reasonable under the circumstances, Plaintiffs' state law claims for invasion of privacy and intentional infliction of emotional distress are barred by the New Mexico Tort Claims Act, and Plaintiffs have failed to state a claim for supervisory liability under either §1983 or generally.

Plaintiffs filed their Response on September 16, 2002, asserting that Defendants failed to

4

inform Judge Dean of the material facts. In their Response, Plaintiffs object to Defendants' Exhibits 5, 6, and 7 on the grounds that these Exhibits fail to comply with the requirements of FED. R. CIV. P. 56(e). Plaintiffs concede that the New Mexico Tort Claims Act does not contain a waiver of liability under the facts of this case and that there is no factual basis for supervisory liability. Defendants filed a Reply in Support of the Motion for Summary Judgment on September 26, 2002.

Plaintiffs filed their Motion to Strike, in part, the Affidavit of Richard Alvarez on August 23, 2002. Defendants responded to the Motion to Strike on September 3, 2002.

### III.     Plaintiffs' Motion to Strike.

Plaintiffs move the strike paragraphs 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 19, 20, and 37 of the Richard Alvarez Affidavit as inadmissible hearsay. When analyzing a summary judgment motion, a court must consider "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . ." FED. R. CIV. P. 56 (c). Supporting and opposing affidavits must be based on personal knowledge and "set forth such facts as would be admissible in evidence" and show affirmatively that the affiant is competent to testify on the matters stated in the affidavit. FED. R. CIV. P. 56 (e). Materials that do not satisfy the standards of Rule 56 are subject to a motion to strike. *See Noblett v. General Elec. Credit Corp.*, 400 F.2d 442, 445 (10th Cir.1968). Only admissible evidence may be considered when ruling on a motion for summary judgment. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). Hearsay evidence that would be inadmissible at trial may not be included in a summary judgment affidavit. *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995).

The statements in Paragraphs 9 through 15 pertain to Defendant Alvarez's assessment of the situation at the Theater and his rationale for setting up the "sting" operation. Paragraph 20 is based

on Alvarez's observations on October 6, 2001. These facts were gained through Alvarez's own perceptions during his investigation. Thus, the statements in Paragraphs 9 through 15 and Paragraph 20 are based on Alvarez's personal knowledge and are not hearsay. Plaintiffs' Motion to Strike is denied as to Paragraphs 9 through 15 and Paragraph 20 of the Alvarez Affidavit.

The statements in Paragraphs 6 through 8, Paragraph 19 and Paragraph 37 are based on statements made by third parties to Defendant Alvarez appear to be offered for the truth of the matter asserted. I have reviewed Paragraphs 6 through 8, Paragraph 19 and Paragraph 37 and have determined that they are hearsay. No exception is evident from the context of the statements. Thus, I find that these paragraphs would be inadmissible at trial. Accordingly, Plaintiffs' Motion to Strike is granted as to Paragraphs 6 through 8, Paragraph 19 and Paragraph 37 of the Alvarez Affidavit.

In their Response to Defendants' Motion for Summary Judgment, Plaintiffs assert that the documents attached as Defendants' Exhibits 5, 6, and 7 should be stricken as inadmissible. Exhibit 5 is the police report for the October 6, 2001 incident, Exhibit 6 are the search warrants with supporting affidavits, and Exhibit 7 is the police report for an incident that occurred on October 16, 2001, when an employee of the Theater found one of the marked bills in her office. (Defs.' Exs. 5, 6, and 7.) The copies of these documents submitted by Defendants are not sworn or certified as required by Rule 56(e). While Defendants state in their Reply that any deficiencies were cured by a supplemental affidavit from Defendant Alvarez, referenced as Exhibit 8, no such supplemental affidavit has been submitted. Defendants failed to obtain leave of the Court to file a supplemental affidavit as required by FED. R. CIV. P. 56 (e). *See Heuser v. Johnson*, 189 F.Supp.2d 1250, 1272 (D.N.M. 2001) (recognizing that leave of the court was required for filing supplemental affidavits). Defendants should have sought leave of the Court to submit a supplemental affidavit. This point is

6

moot, however, because the referenced supplemental affidavit was not submitted.

Only admissible evidence may be considered when evaluating a motion for summary judgment. *See World of Sleep, Inc.*, 756 F.2d at 1474. To qualify as admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence. *See IBP, Inc. v. Mercantile Bank of Topeka*, 6 F. Supp.2d 1258, 1263 (D. Kan. 1998); 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2722 at 384 (3d ed.1998). Any affidavits submitted under Rule 56(e) must be based on personal knowledge, set forth such facts as would be admissible in evidence, and affirmatively show that the affiant is competent to testify as to the subject matter. *See* FED. R. CIV. P. 56 (e).

Defendants have submitted police reports and warrants that are not authenticated nor supported by an affidavit from a person through which they could have been admitted. (Defs. Exs. 5, 6, and 7.)  None of these materials has been authenticated by nor attached to an affidavit, nor are the copies of the documents certified, and there has been no showing as to admissibility. Although Defendants contend that the police reports would be admissible under FED.R.EVID. 803(8)(C), admissibility alone does not satisfy the requirements of Rule 56.

Under Rule 56, reports and records which have not been authenticated are not admissible on summary judgment. *See Rill v. Trautman*, 950 F. Supp. 268, 269 (E.D. Mo. 1996). Although such deficiencies are subject to waiver, *see Michigan State Podiatry Ass'n v. Blue Cross & Blue Shield of Michigan*, 681 F.Supp. 1239, 1243 (E.D.Mich. 1987), Plaintiffs have timely objected to Defendants' Exhibits 5, 6 and 7. Because the documents do not comply with the requirements of Rule 56, and Plaintiffs have raised timely objections, Defendants' Exhibits 5, 6, and 7 will not be

considered by the Court in the instant summary judgment motion.

**IV.     Standard for Summary Judgment.**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.' " *Muñoz v. St. Mary Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (quoting Rule 56(c)). When applying this standard, the Court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id.*

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the non movant on an essential element of the non movant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 644, 671 (10th Cir. 1998). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *See McGarry v. Pitkin Co.*, 175 F.3d 1193, 1201 (10th Cir. 1999).

If the moving party satisfies its initial burden, the party opposing the motion for summary

8

judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof. *See Muñoz,* 221 F.3d at 1164. It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co v. Zenith Radio Corp.*, 475 U.S. at 586. An issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing the motion. *See Bullington v. United Air Lines*, Inc., 186 F.3d 1301, 1313 (10th Cir. 1999). The substantive law at issue determines which facts are material in a given case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* The district court may only consider admissible evidence submitted to defeat summary judgment. *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995); *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1203 n. 1 (10th Cir. 2000).

**V.      Analysis**

Defendants argue that they entitled to qualified immunity with respect to Plaintiffs'§1983 claims because the search warrants were supported by probable cause and the searches were authorized by with the warrants. A government official is entitled to qualified immunity from civil damages when his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In evaluating a claim of qualified immunity, the first question is whether the plaintiff has asserted a violation of a constitutional or statutory right. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Roska v. Peterson*, 304 F.3d 982, 989 (10th Cir. 2002); *Garramone v. Romo*, 94 F.3d 1446, 1449 (10th Cir. 1996). Only if the plaintiff has asserted a violation of a constitutional or statutory right does the

9

inquiry proceed to the second question; whether that right was clearly established such that a reasonable person in the defendant's position would have known that his conduct violated the right. *See Saucier*, 533 U.S. at 200; *Roska*, 304 F.3d at 989; *Garramone,* 94 F.3d at1449 (*citing Siegert v. Gilley*, 500 U.S. 226, 231 (1991)).

The Fourth Amendment, applied to the states through the Fourteenth Amendment's Due Process Clause, protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. It is a violation of the Fourth Amendment for a warrant affiant to "knowingly, or with reckless disregard for the truth," include false statements in the affidavit. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978) (arrest warrant); *United States v. Avery*, 295 F.3d 1158, 1166 (10th Cir. 2002) (search warrant). It is also a Fourth Amendment violation for a search warrant affiant to knowingly or recklessly omit from the affidavit information which, if included, would have vitiated probable cause, *United States v. Kennedy*, 131 F.3d 1371, 1377 (10th Cir.1997); *Stewart v. Donges*, 915 F. 2d 572, 581-83 (10th Cir.1990). Accordingly, "a court may look behind a search warrant when the affiant intentionally or recklessly misleads the magistrate judge by making an affirmatively false statement or omits material information that would alter the magistrate judge's probable cause determination." *Kennedy*, 131 F.3d at 1377.

Plaintiffs allege in their Complaint that Defendants obtained the anticipatory search warrants based solely on information given by them by Theater personnel, failed to question Plaintiffs about the predicate thefts before obtaining the warrants, and that there had been no reported thefts after August. (Comp. ¶ 10.) In their Response to the Motion for Summary Judgment, Plaintiffs point out that Defendants have conceded that they did not inform Judge Dean that Plaintiffs would not have

exclusive control of the vehicles, that there was no police surveillance of the vehicles, and that the vehicles were left unlocked in a dimly lit, unsurveilled parking lot during the time of the alleged predicate thefts. (Pls.' Resp. to Defs' Mot. For Summ. J. at 7.)

In a case where the plaintiff alleges information was intentionally omitted from an affidavit, the existence of probable cause is determined by examining the affidavit as if the omitted information had been included and determining whether the affidavit would still give rise to probable cause. *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir.1996); *Stewart,* 915 F.2d at 582-583. "'Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable . . . will the shield of immunity be lost'" *Davis v. Gracey*, 111 F.3d 1472, 1480 (10th Cir. 1997)(*citing Malley v. Briggs*, 475 U.S. 335, 344-45 (1986)).  The alleged exculpatory facts asserted by Plaintiffs appear insufficient to vitiate probable cause for the issuance of the search warrants.  However, the search warrants and supporting affidavits must be examined in conjunction with the omitted facts to determine whether the warrants and affidavit would still give rise to probable cause. *Wolford*, 78 F.3d at 489;  *Stewart*, 915 F.2d 582 n.13.  In this case, the warrants and supporting affidavits have been stricken for failure to comport with Rule 56(e). Because the warrants and supporting affidavits were not properly presented, it is impossible to determine whether the omitted facts would have negated probable cause.  Qualified immunity cannot be granted based on the existing record.

Defendants argue that they are entitled to summary judgment because the search warrants were supported by probable cause.  Anticipatory warrants differ from traditional search warrants in that at the time of issuance they are not supported by probable cause to believe that the stolen property is currently located at the place to be searched. *United States v. Rowland*, 145 F.3d 1194,

1201 (10th Cir. 1998). The two general requirements for a valid anticipatory warrant are (1) that it be supported by probable cause and (2) that the warrant or supporting affidavit clearly set out conditions precedent to the warrant's execution. *Rowland*, 145 F.3d at 1201 (*citing United States v. Hugoboom*, 112 F.3d 1081, 1085 (10th Cir 1997)). The Tenth Circuit has explained:

> "Probable cause for anticipatory warrants is contingent on the occurrence of certain expected or triggering events, typically the future delivery, sale, or purchase of contraband. Therefore, in making the probable cause determination, the magistrate must "take into account the likelihood that the triggering events will occur on schedule and as predicted. If the triggering events do not occur, the anticipatory warrant is void."

*Rowland*, 145 F.3d at 1201 (internal citations omitted). Because the probable cause for an anticipatory warrant is contingent on the occurrence of anticipated events, the warrant or affidavit should express conditions permitting the search to be conducted only after the anticipated events have taken place. *Id*. Clearly, the Court must review the warrants and supporting affidavits in order to decide whether the anticipatory warrants were supported by probable cause and clearly set out the conditions precedent. The Court is unable to review the affidavits and warrants because Defendants' Exhibits 5, 6, and 7 have been stricken. Defendants are not entitled to summary judgment on this issue because they have failed to comply with Rule 56(e).

Defendants argue that they are entitled to summary judgment because the strip searched were authorized by valid warrants. Plaintiffs have alleged that the strip searches violated their rights under the Fourth and Fourteenth Amendments. "There can be no doubt that a strip search is an invasion of personal rights of the first magnitude." *Chapman v. Nichols*, 989 F.2d 393, 395 (10th Cir.1993). However, the Constitution does not forbid all searches and seizures, but only unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 9 (1968). A balancing test must be employed in order to

determine whether a search was reasonable:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."

*Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

"The test is fact-specific, 'measured in objective terms by examining the totality of the circumstances.' *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000) (quoting *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)). Without access to the warrants and supporting affidavits, the Court is unable to assess whether the strip searches of Plaintiffs were reasonable under the circumstances. Accordingly, Defendants are not entitled to summary judgment on this issue on the current record.

Plaintiffs allege that they were detained for two hours without probable cause. A search warrant based probable cause implicitly carries with it the limited authority to detain the subjects of the warrant while a proper search is conducted. *Michigan v. Summers*, 452 U.S. 692, 705 (1981). As the record now stands, the Court is unable to determine whether the warrants were based on probable cause. Defendants have failed to met their summary judgment burden with respect to the question of whether the warrants were issued on probable cause. Thus, Defendant's Motion for Summary Judgment should be denied with respect to Plaintiffs' claims under § 1983.

Defendants move for summary judgment on Plaintiffs' state law claims and supervisory liability claims Plaintiffs concede that Defendants' Motion for Summary Judgment should be granted

13

with respect to their state law claims and supervisory liability claims. The Motion should be granted as to these claims.

**VI.    Conclusion.**

Upon review of the evidence presented, the Court has determined that Plaintiffs' Motion to Strike in part the Affidavit of Richard Alvarez (Doc. 32), filed on August 23, 2002, should be **GRANTED AS TO PARAGRAPHS 6 THROUGH 8, PARAGRAPH 19 AND PARAGRAPH 37 OF THE ALVAREZ AFFIDAVIT AND DENIED AS TO PARAGRAPHS 9 THROUGH 15 AND PARAGRAPH 20**.  Plaintiffs' objections to Defendants' Exhibits 5, 6, and 7 are sustained and **DEFENDANTS' EXHIBITS 5, 6, AND 7 ARE STRICKEN PURSUANT TO RULE 56(e)**. Defendants' Motion for Summary Judgment (Doc. 24), filed on July 30, 2002, should be **GRANTED WITH RESPECT TO PLAINTIFFS' STATE LAW CLAIMS AND SUPERVISORY LIABILITY CLAIMS AND DENIED AS TO PLAINTIFFS' CLAIMS UNDER 42 U.S.C.§ 1983**.

**IT IS SO ORDERED.**

_____
**LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE**